IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROKON MORRIS DIAHN, | : Civ. No. 1:24-CV-1936 |
| | : |
| Plaintiff, | : (Judge Munley) |
| | : |
| v. | : (Chief Magistrate Judge Bloom) |
| | : |
| CRAIG LOWE, et al., | : |
| | : |
| Defendants | : |

REPORT AND RECOMMENDATION

Petitioner Trokon Morris Diahn, an alien in immigration custody currently housed at the Pike County Correctional Facility, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention without a bond hearing. (Doc. 1). The writ requests Diahn's immediate release or, in the alternative, an individualized bond hearing before an immigration judge ("IJ"), where the government would bear the burden of showing that Diahn's continued detention is necessary. (*Id.* at 24). For the following reasons, we recommend the court grant the petition and order a bond hearing before an IJ.

I. Background

Diahn was born in August of 2001 in an Ivorian refugee camp to Liberian parents fleeing Liberia's civil war and the assassination of

Diahn's uncle. (Doc. 1 ¶ 11). Diahn never set foot in Liberia: his family was admitted to the United States as refugees in 2003 and have lived in the Philadelphia area ever since. (*Id.* ¶ 12). Diahn's father, stepmother, and eight siblings are all United States citizens, and Diahn's mother is a lawful permanent resident. (*Id.*). Diahn has apparently never sought citizenship nor permanent residency.

At the age of 15, Diahn was involved in a fight with other high school students. (Doc. 1 ¶ 14). As a result, Diahn incurred criminal charges, with which he was charged as an adult, pled guilty to one count of aggravated assault, and was sentenced to 23 months of confinement. (*Id.*). Shortly after his release, in March of 2020, Diahn was arrested again and charged with fifteen counts related to alleged bank fraud and identity theft. (Doc. 9-2 at 2). In September of 2022, he pled guilty to conspiracy to commit bank fraud. (Doc. 1-7 at 5-32). Diahn was sentenced to time served (33 months and 25 days, for an expected release date on or around January 7, 2023), plus two years of supervised release. (*Id.* at 33-46).

On December 16, 2022, while serving the remainder of his sentence, Diahn was charged with being a removable alien pursuant to 8 U.S.C.

§§ 1227(a)(2)(A)(ii) and (iii), as an alien convicted of two crimes of moral turpitude, and as an alien convicted of an aggravated felony, respectively. (Doc. 1 ¶ 16). He appeared in the Baltimore Immigration Court in January of 2023 before IJ Golparvar, who advised Diahn of the various methods by which he could attempt to resist removal. (Doc. 15 at 7). Diahn, acting *pro se*, eventually applied for adjustment of status, an inadmissibility waiver as to the same, asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at 17). Diahn appeared before IJ Golparvar again in April of 2023, but because Diahn's various applications for relief were still pending, the IJ adjourned the matter to allow United States Citizenship and Immigration Services ("USCIS") time to rule on those applications. (Doc. 16-9 at 3-4). IJ Golparvar speculated that the ruling might be available in a month's time. (*Id.*). Diahn appeared before IJ Golparvar twice more in June, once in July, and once in August of 2023, and at all these appearances, the matter was continued as the parties awaited USCIS's decisions. (Docs. 16-10 - 16-13). USCIS denied the applications on September 1, 2023. (Doc. 16-14 at 4).

In October of 2023, Diahn appeared before IJ McDermott at the

Philadelphia Immigration Court. (Doc. 16-14). IJ McDermott acknowledged that he was empowered to reconsider USCIS's denials but ultimately found all of Diahn's applications were properly denied. (*Id.* at 56). Diahn appealed to the Board of Immigration Appeals ("BIA"), and in April of 2024, that appeal was denied, making his removal order administratively final. (Doc. 1-3 at 2-6).

In May of 2024, Diahn appealed his removal to the Third Circuit Court of Appeals and requested they appoint counsel for the appeal. (Doc. 1 ¶ 19). In October of 2024, the Court ordered Diahn's petition for review transferred to the Fourth Circuit Court of Appeals because Diahn's immigration proceedings had been initiated at the Baltimore Immigration Court, and the change to a Philadelphia Immigration Court was made without a formal change of venue. (*Id.* ¶ 20). Diahn also filed a motion with the BIA to reopen his case, which was denied in October of 2024, but which Diahn may still appeal to the Fourth Circuit. (*Id.* ¶ 21, Doc. 1-4 at 2).

Diahn avers that, since September of 2024, he has been cooperative with Immigration and Customs Enforcement ("ICE") in their efforts to procure travel documents to facilitate his removal to Liberia. (Doc. 1 ¶¶

22-23). Those efforts have not been fruitful—Diahn alleges that an ICE official indicated to him that the travel documents were not forthcoming, and that Liberia was to blame. (*Id.*). The Government has not controverted this statement nor presented evidence that travel documents have been obtained.

Although Diahn did not initially seek a stay of removal along with his appeal to the Third Circuit, he did so with the Fourth Circuit in January of 2025. (*See* Docs. 12-13). The Fourth Circuit granted a temporary stay of removal through January 16 (Doc. 12-1 at 2), and then on January 15, 2025, formally stayed Diahn's removal pending review of his appeal. (Doc. 13-1 at 1). The parties agree that the effect of the Fourth Circuit's stay is to effectively "regress" Diahn's status as being detained pursuant to 8 U.S.C. § 1226(c). (Docs. 12 at 1, 15 at 11-12, n. 3). The parties also agree that Diahn has been in ICE custody since November 1, 2023, and has been detained at the Pike County Correctional Facility for the majority of his detention. (Doc. 15 at 11).

Diahn argues that his 18-month detention pursuant to 8 U.S.C. § 1226(c) without a bail hearing is unreasonable and a violation of the due process clause of the Fifth Amendment. He asks the court to issue a

5

writ of habeas corpus ordering either his release or an individualized bond hearing before an IJ. As explained below, we recommend the Court grant the writ and order an individualized bond hearing.

II. Discussion

    a. Individualized Bond Hearings for Persons Detained Under § 1226(c) – Standard of Review

The petitioner is being held pursuant to 8 U.S.C. § 1226, which distinguishes between two categories of removable aliens: those held under Section 1226(a) who may be released on conditional parole, and those held under Section 1226(c), which permits conditional parole only if release is necessary for witness protection purposes and the alien can demonstrate they are neither a danger to their community nor a flight risk. *See Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018). "[A]n alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings." *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 214 (3d Cir. 2018). But Section 1226(c)'s mandatory detention of certain persons, including aliens convicted of certain enumerated crimes, does not require a hearing to begin or continue an alien's detention under that statute. 8 U.S.C. § 1226(c); *see*

6

also *Jennings,* 583 U.S. at 288.

The Supreme Court has held that while "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process, especially prolonged detention nonetheless implicates due process. *Demore v. Kim*, 538 U.S. 510, 531 (2003). Considering when a detention would qualify as especially prolonged, the *Demore* Court noted that detention under Section 1226(c) is typically less than 90 days, and in the 85 percent of cases featuring no appeal by the detainee, "removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the alien appeals . . . appeal takes an average of four months [.]" *Id.* at 530. The Court found the petitioner in *Demore* was not due a hearing because the length of his detention (six months) was only "somewhat longer than average" and the delay was largely due to petitioner's decision to exercise his appellate rights. *Id.* at 531.

After *Demore*, the Third Circuit Court of Appeals considered the issue of due process in the context of detention under Section 1226(c) in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011) and again in *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015).

7

In *Diop*, the Third Circuit explained that Section 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop,* 656 F.3d at 231. The Court held that at "a certain point [,]" continued detention under Section 1226(c) "becomes unconstitutional," at which time due process requires an individualized hearing in which the Government bears the burden to justify the detention by showing the detainee is either a flight risk or a danger to the community. *Id.* at 232-33. The Third Circuit did not draw a specific temporal line in the sand, instead finding *Demore* established detention up to six months was reasonable, but after six months, "continued detention without inquiry into its necessity becomes more and more suspect as detention continues [.]" *Id.* at 234.

In *Chavez Alvarez*, the Third Circuit held that continued detention under Section 1226(c) without a bond hearing "certainly" became unreasonable after one year. *Chavez-Alvarez*, 783 F.3d at 478. However, to the extent that *Chavez-Alvarez* created a Third Circuit rule that

detention under Section 1226(c) became presumptively unreasonable after one year, the Supreme Court abrogated that rule in *Jennings*. *See German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020). While *Jennings* disapproved of a temporal rule, it left intact the proposition that unreasonably long detentions under Section 1226(c) violate due process unless an individualized bond hearing shows detention is necessary to serve the goals of that statute. *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *see also German Santos*, 965 F.3d at 210.

After *Jennings*, the Third Circuit revisited Section 1226(c) in *German Santos,* where the court "distilled from *Diop* and *Chavez-Alvarez* a non-exhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable." *Malede v. Lowe*, No. 1:22-CV-1031, 2022 WL 3084304, at *5 (quoting *German Santos*) (citation modified). Those four factors are: (1) the duration of detention so far; (2) the likelihood of continued detention; (3) if either party has improperly caused delay, and; (4) the conditions of confinement, particularly if they are "'meaningfully different' from criminal punishment." *German Santos*, 965 F.3d at 211 (quoting *Chavez-Alvarez*, 783 F.3d at 478).

9

### b. The *German Santos* Factors Show a Hearing is Necessary Here.

Below, we consider the *German Santos* factors and conclude that Diahn's detention without a hearing has become unreasonable. Thus, we recommend the court grant his writ of habeas corpus and order an individualized bond hearing in front of an IJ.

The first *German Santos* factor, the duration of the detention, is the "most important" of the four. *German Santos*, 965 F.3d at 211. As discussed, Diahn has been in ICE custody for approximately 19 months since November 1, 2023. That is significantly longer than the one year which Third Circuit found objectionable in *Chavez-Alvarez* and more than four times longer than the four-month average the Supreme Court identified in *Demore*. But it is shorter than the detention of the petitioner in *German Santos* (31 months). *Id.* at 207. Courts in this district have found that 18 months' detention is unreasonably long in some cases but not in others. *Contrast Elyardo v. Lechleitner*, No. 1:23-CV-1089, 2023 WL 8259252, at *3 (M.D. Pa. Nov. 29, 2023) (finding 19 months of detention unreasonable) *with Crooks v. Lowe*, No. 1:18-CV-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (finding 18 months detention reasonable because the case had "proceeded through the

removal process at a reasonable pace [.]").

Cases finding this period of time reasonable seemingly turn on factors other than the length of detention. For example, in *Gabriel v. Barr*, the Court held an 18-month period of detention was reasonable but explained that this was because the petitioner had received a bond hearing after eight months of detention. *Gabriel v. Barr*, 1:20-CV-1054, 2021 WL 268996, at *3 (M.D. Pa. Jan. 27, 2021); *see also Flores-Lopez v. Lowe,* No. 1:21-CV-1839, 2021 WL 6134453, at *2 (M.D. Pa. Dec. 29, 2021) (petitioner held pursuant to § 1226(a) for 18 months was not due a hearing because *German Santos* only applies to subsection (c) and persons detained pursuant to subsection (a) get an initial bond hearing). But in other cases, courts have determined that detention for 18 months (or less) was unreasonable and required a bond hearing. *See e.g., Malede*, 2022 WL 3084304, at *5 (18 months detention held unreasonable); *Saquib K. v. Tsoukaris*, No. CV 20-3849 (SDW), 2020 WL 2111028, at *2 (D.N.J. May 4, 2020) (12 months detention held unreasonable); *Amadu K. v. Anderson*, No. 2:20-CV-3220 (BRM), 2020 WL 1864583, at *4 (D.N.J. Apr. 14, 2020) (12 months detention held unreasonable); *Kleinauskaite v. Doll*, No. 4:17-CV-02176, 2019 WL 3302236, at *6 (M.D.

Pa. July 23, 2019) (12 months detention held unreasonable); *Bah v. Doll*, No. CV 3:18-1409, 2018 WL 5829668, at *1 (M.D. Pa. Nov. 7, 2018) (14 months detention held unreasonable).

In our view, this case is in line with those finding eighteen months an unreasonable period of detention. Particularly because, as discussed below, this case has not moved through the removal process at a normal pace. We conclude this factor weighs in favor of granting a hearing.

The second factor considers the likelihood of continued detention. The Government argues that "this factor relies on unhelpful hypothesizing of future events, and improperly requires litigants to argue to this Court the merits of their position at the procedural level." (Doc. 15 at 26). Despite that, the Government urges us to find this factor weighs against holding a hearing, arguing that Diahn's future is "quite clear" because the Fourth Circuit will deny his petition for review. (*Id.*). They argue that the Fourth Circuit holding in Diahn's favor is "unlikely given the BIA's previous review." (*Id.*). We note that the Government made a similar argument earlier in this case, arguing in December of 2024 that Diahn's "removal to Liberia is not only reasonably foreseeable, but scheduled to occur within the next [45] days." (Doc. 8 at 11). That

12

removal did not occur. We mention this only to emphasize, as the Government did, that their only avenue for argument on this factor necessarily involves speculation.

There is no question that Diahn will remain in detention for some amount of time while the Fourth Circuit considers his appeal. On the one hand, we hesitate to credit the admittedly speculative argument that because Diahn is inching closer to a final outcome, we may assume he will not be detained for a considerable period past what he has already endured. Additionally, there is uncertainty injected by the apparent failure to secure Liberia's cooperation in this matter. On the other hand, we need not bury our heads in the sand as to the case's status: the Government is correct that Diahn's legal options to extend the life of the case are mostly exhausted, and we agree that it is reasonably likely the Fourth Circuit rules on Diahn's appeal relatively soon. Given the myriad uncertainties here, we conclude this factor is neutral.

The third factor considers if the delay is attributable to either party. The Government urges us to consider this factor as being neutral, arguing that the "proceedings have moved forward at the normal rate[.]" (Doc. 15 at 27). We disagree. First, we note that *Demore* suggested the

average time for a case like this that is being appealed is roughly four months, and this case has reached 19 months. Second, we do not think that IJ Golparvar would have scheduled five different hearings over five months in anticipation of USCIS having ruled on Diahn's applications if it was "normal" for USCIS to take five months to rule on those applications. Finally, and most impactfully, we note that Diahn's appeal was before the Third Circuit Court of Appeals for over four months before the Court transferred the matter to the Fourth Circuit due to an improper venue. Neither party has suggested how or why the improper venue change occurred, but we are hesitant to conclude that it occurred due to any action by Diahn as the petitioner. We presume the error, wherever it occurred, to be unmalicious, but conclude that it caused four months of delay. For all those reasons, we conclude this factor weighs in favor of granting a hearing.

Finally, as to the fourth factor, the parties agree that Diahn's present conditions of confinement are essentially indistinguishable from criminal incarceration and that this factor weighs in favor of a hearing. (Docs. 12 at 5, 15 at 28). We concur. *See German Santos,* 965 F.3d at 212-13 (finding that detention in Pike County Correctional Facility was

14

"indistinguishable from criminal punishment" and that "strongly favor[s] a finding of unreasonableness.").

In sum, we conclude three of four *German Santos* factors, including the "most important" factor, weigh in favor of a hearing. Given those findings, we have little difficulty concluding that due process demands Diahn be granted an individualized bond hearing. We therefore recommend the Court grant the writ and order such a hearing before an immigration judge.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the petition for the writ of habeas corpus (Doc. 1) be GRANTED, and an individualized bond hearing held within 30 days of the Court's order.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.

The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of July 2025.

                                       *s/ Daryl F. Bloom*
                                       Daryl F. Bloom