IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROKON MORRIS DIAHN, | : | No. 1:24cv1936 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CRAIG LOWE, in his official capacity, | : | |
| As Acting Warden of the Pike | : | |
| County Correctional Facility, *et al.* | : | |
| Respondents | : | |

## MEMORANDUM

The court previously granted Petitioner Trokan Morris Diahn's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this immigration detention matter. As a result, Diahn received a bond hearing before an immigration judge ("IJ"). The IJ granted the petitioner's release from detention on a $12,500 immigration bond. Immigration and Customs Enforcement ("ICE") has not accepted the IJ's ruling.

Before the court is Diahn's second motion to enforce the writ. (Doc. 27). Diahn's motion concerns ICE's unilateral imposition of additional conditions of release. As discussed below, the motion to enforce will be granted. ICE will be directed to remove Diahn from electronic monitoring and lift all other requirements that were not imposed by the IJ as the result of the court-ordered bond hearing.

## Background

Diahn was born in August 2001 to Liberian parents in an Ivorian refugee camp.[1] Diahn's family fled Liberia's civil war and endured the assassination of the petitioner's uncle. Diahn never set foot in Liberia. His family was admitted to the United States as refugees and have lived in the Philadelphia area since then. Diahn's father, stepmother, and eight siblings are all United States citizens. Diahn's mother is a lawful permanent resident. Diahn himself, however, has apparently never sought citizenship nor permanent residency.

Diahn is a convicted felon. At age 15, he was charged with aggravated assault as an adult offender for a fight with other high school students. He pled guilty and was sentenced to 23 months of confinement. Shortly after release, in March 2020, Diahn was arrested again and charged with 15 counts related to bank fraud and identity theft. In September 2022, he pled guilty to conspiracy to commit bank fraud and was sentenced to time served, plus two years or supervised release. United States v. Diahn, No. 1:20cr80 (Wilson, J).

The government has been trying to deport Diahn for years. On December 16, 2022, Diahn was charged with being a removable alien pursuant to 8 U.S.C.

---

[1] These background facts are derived, in part, from an R&R issued by Chief United States Magistrate Judge Daryl F. Bloom on July 11, 2025. Diahn v. Lowe, No. 1:24-CV-1936, 2025 WL 2115442, at *1 (M.D. Pa. July 11, 2025), report and recommendation adopted, No. 1:24CV1936, 2025 WL 2112074 (M.D. Pa. July 28, 2025). Neither party objected to these facts.

2

§ 1227(a)(2)(A)(ii) and (iii) based on the above offenses. Diahn, acting pro se, eventually applied for adjustment of status, an inadmissibility waiver as to the same, asylum, withholding of removal, and protection under the Convention Against Torture. United States Citizenship and Immigration Services ("USCIS") denied Diahn's applications on September 1, 2023. Diahn then sought reconsideration with an IJ and with the Board of Immigration Appeals ("BIA"). Thereafter, Diahn was taken into ICE custody on November 1, 2023 and held at the Pike County Correctional Facility ("Pike CCF"). In April 2024, the BIA denied his appeal, making his removal order administratively final.

Diahn appealed his removal order. Currently, three of Diahn's appeals remain pending before the Fourth Circuit Court of Appeals, Diahn v. Bondi, 24-2066, 24-2154, 25-1692. Those appeals appear to be fully briefed and are pending oral argument.

Meanwhile, in November 2024, after 12 months in ICE custody, Diahn filed a petition for writ of habeas corpus under Section 2241 in the Middle District of Pennsylvania. (Doc. 1). On July 28, 2025, the court adopted a report and recommendation ("R&R") of Chief Magistrate Judge Daryl F. Bloom in its entirety. (Doc. 21). Magistrate Judge Bloom, and subsequently the undersigned, determined that Diahn's detention without a bond hearing violated the petitioner's due process rights. By that time, Diahn had been in custody for 20 months. To

remedy the violation, the court ordered a bond hearing before an IJ within thirty (30) days, as suggested by the R&R. Id.

Following that order, IJ Leo Finston conducted a bond hearing on August 11, 2025. He determined that petitioner was neither a flight risk nor a danger to the community, provided that Diahn post a bond of $12,500 to secure his release. (Doc. 22-1, First Mot. to Enforce, Ex. A., ECF pp. 3–4). IJ Finston's bond memorandum states, in relevant part:

> Although [Diahn's] convictions are serious and [Diahn] spent a significant time in custody, the [c]ourt does not find that [DHS] has shown, by clear and convincing evidence, that this respondent would pose a danger to persons or property in the future. [DHS] does not meet their burden of showing that the respondent poses a danger to society simply by stating that [Diahn] has a serious criminal history, without more.
>
> On the contrary, [Diahn] presented evidence of rehabilitation and has assured support from his community. Upon release, the respondent intends to live and work with his parents, both of whom own their own business. Furthermore, the respondent has been in immigration proceedings for over a decade and has been granted stays of removal pending review of his appeal by the Fourth Circuit Court of Appeals…This demonstrates that [Diahn] has a clear vested interest in continuing to participate in his immigration proceedings. Thus, the [c]ourt finds that [DHS] has not met its burden, by clear and convincing evidence, to show that this respondent's further detention is necessary to prevent the respondent from posing a danger or a flight risk.

> Accordingly, the request for a change in custody status is granted. The [c]ourt hereby orders that [Diahn] be released from custody under bond of $12,500.

(Doc. 27-1, Pet. Ex. D., Bond Memorandum at ECF p. 24–25).

ICE appealed the IJ's decision, which triggered an automatic stay. Id., Ex. C, ECF pp. 10. The effect kept Diahn detained at Pike CCF.

Diahn then filed a motion to enforce, his first, challenging that appeal as unconstitutional and ultra vires. (Doc. 22). Legal counsel for ICE quickly advised the United States Attorney's Office that the automatic stay was withdrawn. (Doc. 24 at 1–2, see also Doc, 29-1). Diahn then posted bond on August 27, 2025.[2] (Doc. 24 at 1–2). Consequently, the government filed a suggestion of mootness with its response to the first motion to enforce. Id. The court did not take any additional action at that time.

Diahn, however, has been subjected to other requirements by ICE beyond those contemplated by the IJ. In his second motion to enforce, filed September 26, 2025, Diahn avers that ICE has placed him on an Intensive Supervision Appearance Program ("ISAP") through an Individual Service Plan. According to that plan, he has been assigned a case specialist and is required to report face-to-face every 8 weeks. (Doc. 27-1, ECF p. 25). Diahn has also been placed on

---

[2] Diahn was permitted to post bond exactly thirty (30) days after the July 28, 2025 order despite the IJ's determination two weeks prior.

5

electronic monitoring, that is, a BI LOC8 XT location tracking and GPS monitoring device ("ICE ankle monitor"). Id. Diahn is also subjected to home visits every 8 weeks. Id.

Diahn further indicates that his ICE ankle monitor has malfunctioned once, disabling the GPS. This circumstance required Diahn to report to an ICE facility with his lawyer to have a new monitor placed in his ankle. Diahn reports that having the monitor is "stressful" and makes him feel like he is "constantly being watched." The device "always bumps into things and hurts," according to the petitioner, and it wakes him up at night.

As for the present conditions of Diahn's release, he has supplied an affidavit indicating that he has been living with his father and working in his mother's restaurant part-time. He avers that he has checked in with his probation officer as part of the supervised release portion of his federal criminal sentence. He has also reported for his ISAP face-to-face visits.

To the court's knowledge, Diahn's has been on the ICE ankle monitor for approximately 120 days with no issues reported. The Fourth Circuit has not yet decided Diahn's appeals. Additionally, there are no reports that Diahn has violated any terms of his supervised release in his federal criminal case.

The court also notes that ICE has filed an appeal of the IJ's bond order with the BIA, despite the fact that this matter remains in an administrative gray-area based upon the habeas corpus relief issued by the court.

**Jurisdiction**

The court has jurisdiction pursuant to 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 2241(c)(3), which allows a court to grant a writ of habeas corpus to an individual held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  The court has no trouble concluding that Diahn remains "in custody" due to his GPS ankle monitor and other ISAP reporting requirements. See Maleng v. Cook, 490 U.S. 488, 492 (1989) (acknowledging that the "in custody" requirement for purposes of federal habeas is construed "very liberally"); see also Orellana Juarez v. Moniz, 788 F. Supp. 3d 61, 67–68 (D. Mass. 2025) (citing Hensley v. Municipal Court, 411 U.S. 345, 351 (1973); Jones v. Cunningham, 371 U.S. 236, 243 (1963)); Da Silva v. LaForge, No. 25CV17095 (EP), 2026 WL 45165, at *3 (D.N.J. Jan. 7, 2026); N- N- v. McShane, No. CV 25-5494, 2025 WL 3143594, at *4 (E.D. Pa. Nov. 10, 2025).

Furthermore, there is no question that this court has the power to enforce its writs of habeas corpus and may address alleged non-compliance by the government.  See Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citations

omitted); Santos v. Lowe, No. 1:18-CV-1553, 2020 WL 4530728, at *2 (M.D. Pa. Aug. 6, 2020) (Rambo, J.) (citations omitted).

**Analysis**

With the current motion to enforce, Diahn contends that ICE's actions violate the prior order of court, intrude on the court's jurisdiction, and further infringe on his due process rights. The government asserts that DHS is legally authorized to impose such conditions upon a detainee's release from custody, 8 U.S.C. § 1226(a)(2), and may appeal a bond decision to the BIA under its regulations, 8 C.F.R. §§ 1003.6(c), 1003.19(i). The government also argues that the Diahn should be required to exhaust administrative remedies prior to returning to court.

ICE clearly imposed additional conditions on Diahn that were not contemplated by the IJ or by the court. For that reason alone, the second motion to enforce will be granted. The court, however, will work through the government's non-justification of ICE's conduct below.

    **1. ICE Acted Without Statutory Authority in this Matter**

The government argues that 8 U.S.C. § 1226(a)(2)(A) authorizes ICE's conduct even if the IJ ordered release on bond. (Doc. 29, Br. in Opp. at 5–6). The court disagrees.

8

First, the parties previously agreed that Diahn was held under 8 U.S.C. § 1226(c) as a "criminal alien." (Doc. 17, R&R at 5). That finding is now the law of the case.[3] See Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1982).

Second, even if the applicable statute had not already been decided in this matter, the government's Section 1226(a) argument is downright Kafkaesque in these circumstances. If Diahn was subject to Section 1226(a), he would have received a bond hearing in the first instance and would not have had to file this habeas action after being held in Pike CCF for many months. Diahn's prolonged detention is how the parties got here in the first place. As explained further:

> Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more ... classes of deportable aliens." [8 U.S.C.] § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See [8 U.S.C.] §§ 1227(a)(1), (2).
>
> Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal. As relevant here, § 1226 distinguishes between two different categories of aliens.
>
> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to

---

[3] The government failed to object to the R&R or appeal after the court adopted the R&R.

9

> be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on ...bond" or "conditional parole." Ibid.
>
> Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).

Jennings v. Rodriguez, 583 U.S. 281, 288–89 (2018) (footnote omitted) (paragraphing added).

There is simply no statutory support for the government's position in this case. Section 1226(a) cannot be used as a fallback position when a court-ordered bond hearing for a Section 1226(c) detainee does not end in continued detention.

### 2. Diahn Need Not Exhaust Administrative Remedies

The government also argues that Diahn must exhaust his administrative remedies prior to returning to court. However, there is no administrative exhaustion requirement where the petitioner has been in custody under 8 U.S.C. § 1226(c) for an inordinate, rights-violating period of time. Rather, as the government concedes, any exhaustion requirement would be prudential in this case, *i.e.*, judge-made and discretionary. (Doc. 29, Br. in Opp. at 11 (citing Chajchic v. Rowley, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July

25, 2017) (Carlson, M.J.), report and recommendation adopted, No. 1:17-CV-457, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017) (Conner, J.)).

Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). "But even when courts might otherwise require exhaustion, they may excuse it when, for instance, 'waiver, estoppel, tolling or futility' applies." Id. (quoting Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007)). Prudential exhaustion may also be excused "when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights." Id. (quoting Susquehanna Valley All. v. Three Mile Island Nuclear Reactor, 619 F.2d 231, 245 (3d Cir. 1980)).

Here, there are at least three reasons why Diahn need not wait for any administrative appeals to play out. First, the court has already determined that Diahn's detention has become unreasonably long. Second, Diahn "won" his release on bond. Third, despite that unconditional release on bond, Diahn was placed on the ISAP program with an ICE ankle monitor because ICE believed it had the power to act unilaterally, not because an IJ ordered it. In any appeal to the BIA, Diahn would not be challenging the amount of the bond or the fact that he must pay it; he would be challenging ICE's authority to add extra-judicial

11

conditions to his release. Consequently, in these circumstances, where exhaustion is a flexible rule of prudence, not a jurisdiction-limiting restraint, the court will not require exhaustion where Diahn's due process rights continue to be violated.

### 3. ICE's Appeal to the BIA Stands on Shaky Regulatory Grounds

On one final note, Diahn challenges the BIA's authority over ICE's efforts to reverse the IJ's bond order. The government counters that ICE appropriately appealed the IJ's order to the BIA under the regulations. (Doc. 29 at 7–8 (citing 8 C.F.R. §§ 1236.1(d)(1), 1236.1(d)(3)(i)).[4] The court is not convinced that any promulgated regulations apply to Diahn, an immigration detainee who has spent an unreasonable amount of time in custody and was granted habeas relief in the form of a bond hearing with an IJ.

As observed by the United States Supreme Court, the regulations relied upon by the government, "provide that aliens detained *under § 1226(a)* receive bond hearings at the *outset of detention*." Jennings, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) (emphasis added). At the outset of this controversy, Diahn was to be held in detention without the ability to seek a bond hearing under the INA.

---

[4] The court believes the government miscited 8 C.F.R. § 1236.1(d)(3)(i) as "8 C.F.R. § 1236.1(d)(i)" on Page 8 of their response to Diahn's second motion to enforce.

12

Nonetheless, the court need only rule on the most pressing portions of Diahn's second motion to enforce, the ICE ankle monitor and other ISAP reporting requirements, which went beyond the IJ's order. Should the decision of the IJ be reversed by the BIA, the courts remain open to hear Diahn's arguments that the BIA lacked jurisdiction.

**Conclusion**

When the IJ set a $12,500 bond, he determined that Diahn was not a danger to society. Further, the bond amount set by the IJ represented the specific condition that the IJ deemed sufficient to ensure that Diahn would not flee — nothing more, nothing less. By imposing additional conditions, ICE acted without legal authority. Consequently, the court will grant Diahn's second motion to enforce and release him from the ICE ankle monitor and all ISAP reporting requirements. An appropriate order follows.

Date: 1/12/26

JUDGE JULIA K. MUNLEY
United States District Court